UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH MONDANO, *individually and as parent and natural guardian of* L.M.,

                    Plaintiff,

        -v-

DAVID C. BANKS, *et al.*,

                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/5/2026

**REPORT AND RECOMMENDATION**

24-CV-8241 (DEH) (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

**To the Honorable Dale E. Ho, United States District Judge:**

Plaintiff Joseph Mondano ("Plaintiff"), individually and as parent and natural guardian of L.M., brings this case against David C. Banks, as Chancellor of the New York City Department of Education, and the New York City Department of Education ("DOE" and, collectively, "Defendants") under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (the "IDEA"). This action seeks judicial review of an amended pendency order (the "Amended Pendency Order") entered by an Impartial Hearing Officer on August 2, 2024. The purpose of this order was to preserve the status quo during Plaintiff's legal challenge under the IDEA. The Amended Pendency Order required the DOE to provide for L.M.'s transportation to and from school. Plaintiff claims this decision was erroneous because it should have required the DOE to pay for transportation through a private company, Sisters Travel and Transportation Services LLC ("Sisters").

1

Plaintiff and Defendants now move for summary judgment.  For the reasons discussed below, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 26 ("Plaintiff's Motion"), be **GRANTED**, and that Defendants' Motion for Summary Judgment, ECF No. 34 ("Defendants' Motion"), be **DENIED**.  Further, the undersigned respectfully **RECOMMENDS** that this case be remanded for determinations consistent with this Report and Recommendation.

I.    **BACKGROUND**

A.    **Overview of IDEA Administrative Proceedings and the Pendency Determination**

The purpose of the IDEA is to promote education for children with disabilities.  *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1115 (2d Cir. 1997).  States receiving federal assistance must provide a "free appropriate public education [("FAPE")] . . . to all children with disabilities."  20 U.S.C. § 1412(a)(1)(A).  A FAPE includes, among other things, "special education and related services."  20 U.S.C. § 1401(9).  Transportation to and from school is considered a "related service" under the IDEA.  20 U.S.C. § 1401(26)(A).

The IDEA calls for the creation of an individualized education program ("IEP") to ensure that a child with disabilities receives a FAPE.  20 U.S.C. § 1412(a)(4).  A child's IEP is developed by a Committee on Special Education ("CSE") composed of a student's parent(s), teachers, school psychologist, and a school district representative, among others.  N.Y. Educ. Law § 4402(1)(b)(1).  A parent who is

dissatisfied with the IEP can challenge it by filing a due process complaint ("DPC"), which is heard before an Impartial Hearing Officer ("IHO"). *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 224 (2d Cir. 2012).

While a parent's DPC is being litigated, "the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). Section 1415(j), also described as the "pendency" or "stay-put" provision, endeavors to maintain the educational status quo for the child during the pendency of the dispute. *Moonsammy v. Banks*, No. 24-CV-2616 (PAE), 2024 WL 2831042, at *5–6 (S.D.N.Y. June 3, 2024). The Second Circuit has characterized the stay-put provision as "an automatic preliminary injunction" because "[t]he statute substitutes an absolute rule in favor of the status quo" as opposed to the typical preliminary injunction analysis. *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). The central question in this case is what constituted L.M.'s "then-current educational placement" when Plaintiff filed the due process challenge to L.M.'s IEP for the 2024–2025 school year.

An IHO may issue a pendency order in advance of issuing final findings of fact and decision ("FOFD") in response to a due process complaint. *Abrams v. Carranza*, No. 19-CV-4175 (AJN), 2019 WL 2385561, at *1 (S.D.N.Y. June 6, 2019). The IHO's decisions (both the pendency order and the FOFD) can be appealed to a State Review Officer ("SRO"). *Id.* The SRO's decision is then appealable in state or federal court. 20 U.S.C. § 1415(i)(2)(A). There are exceptions to this typical

3

sequence, including when a plaintiff alleges a violation of the "stay-put" provision of the IDEA. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199–200 (2d Cir. 2002).[1]

### B.    Factual and Procedural Background

#### 1.    2022–2023 School Year

L.M. suffers from a brain-based disorder that adversely affects her educational abilities and performance. Complaint, ECF No. 1 (the "Complaint") ¶ 7. On June 11, 2022, Plaintiff enrolled L.M. at the International Institute for the Brain ("iBrain"), where she had been enrolled for a portion of the previous school year. SRO Decision 22-150, ECF No. 4-1 ("SRO 22-150") at 5–6.[2] Plaintiff then filed a July 6, 2022 due process complaint alleging that the DOE failed to provide a FAPE for the 2021–2022 and 2022–2023 school years, in part because L.M.'s placement at International Academy of Hope ("iHOPE") did not provide appropriate academic instruction. Complaint, ECF No. 1 ¶ 42; SRO 22-150, ECF No. 4-1 at 7. Accordingly, Plaintiff sought to establish iBrain as L.M.'s pendency placement. SRO 22-150, ECF No. 4-1 at 6–7. This DPC was designated as IHO Case No. 228621 and assigned to IHO Chak. Complaint, ECF No. 1 ¶¶ 45–46.

Dissatisfied with IHO Chak's decision, Plaintiff filed an administrative appeal, SRO 22-150, before SRO Bates. *See* SRO 22-150, ECF No. 4-1 at 2, 34. SRO

---

[1] Putting these acronyms together, a parent who believes that the IEP fails to provide a FAPE files a DPC before an IHO. The IHO issues an FOFD, which can then be appealed to an SRO. The decision of the SRO can be appealed in court.

[2] Cited page numbers refer to the ECF-generated pagination. Filings in this action are cited as "ECF No. ___."

Bates determined that Plaintiff was not entitled to DOE funding for school at iBrain for 2021–2022, but was "entitled to tuition reimbursement for the cost of iBrain and transportation expenses for the 2022–2023 school year." *Id.* at 34. These "transportation expenses" were for transportation through Sisters. *Id.* at 6. SRO Bates conditioned reimbursement for the 2022–2023 school year "upon proof of payment shown." *Id.* at 34.

Plaintiff appealed from the IHO's pendency order by filing Case No. 22-CV-7519 in the Southern District of New York on September 2, 2022 (the "2022 Action"). Complaint, ECF No. 1 ¶¶ 57–58; 2022 Action, Dkt. No. 1. The 2022 Action was assigned to Judge Cronan. *Id.* After SRO No. 22-150 was decided, Plaintiff amended his complaint in the 2022 Action to include an appeal from the SRO decision. 2022 Action, Dkt. No. 21 ¶¶ 77–100. On March 30, 2024, Judge Cronan granted Plaintiff's motion for summary judgment "as to his request for the school district's direct retroactive payment for tuition and related services for the 2022–2023 school year." 2022 Action, Dkt. No. 33 at 26. As relevant for present purposes, this decision required the DOE to pay for transportation through Sisters. Complaint, ECF No. 1 ¶¶ 61–62. The Parties later settled the 2022 Action, and the case was dismissed on October 22, 2024. 2022 Action, Dkt. No. 57.

### 2. 2023–2024 School Year

L.M. continued to attend iBrain for the 2023–2024 school year. Due Process Complaint, ECF No. 4-3 ("July 2 DPC") at 17. On July 5, 2023, Plaintiff filed a due

5

process complaint challenging the IEP for 2023–2024, which was assigned to IHO Adonis as IHO Case No. 250975. Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, ECF No. 27 ("Pl. Mem.") at 9–10. On August 31, 2023, IHO Adonis issued a pendency order requiring the DOE to make "installment payments" for L.M.'s transportation services through Sisters. *Id.* at 10. Later, IHO Adonis issued an FOFD ordering the DOE to provide L.M's transportation "for the remainder of the 2023/2024 school year as needed by the Student to receive in-person special education services." ECF No. 65-2 at 14.

Plaintiff appealed this FOFD through SRO Appeal No. 23-312 ("SRO 23-312"). Pl. Mem., ECF No. 27 at 10. On appeal, SRO Bates ruled, "I decline to disturb the IHO's decision to deny direct district funding for Sisters Transportation or the IHO's order directing the district to provide district transportation to the student to iBrain." July 2 DPC, ECF No. 4-3 at 25. On April 29, 2024, Plaintiff appealed this decision through an action filed in the Southern District of New York, Case No. 24-CV-3266, which was assigned to Judge Garnett (the "2024 Action"). *See* 2024 Action, Dkt. No. 1. The parties settled the 2024 Action, and the case was dismissed on October 23, 2024. 2024 Action, Dkt. No. 30.

### 3.    2024–2025 School Year

On April 16, 2024, a CSE convened to develop an IEP for L.M. for the 2024–2025 school year. Complaint, ECF No. 1 ¶ 84. Plaintiff disagreed with the IEP and re-enrolled L.M. at iBrain. Pl. Mem., ECF No. 27 at 11. On June 17, 2024, Plaintiff

entered into a School Transportation Annual Service Agreement with Sisters to provide L.M. with transportation to iBrain. *Id.*; School Transportation Annual Service Agreement, ECF No. 4-2 (the "Sisters Agreement").

Plaintiff filed a DPC on July 2, 2024, which was assigned IHO Case No. 277244 before IHO White. Pl. Mem., ECF No. 27 at 11. On July 31, 2024, IHO White issued an Order on Pendency finding that iBrain was L.M.'s then-current placement. ECF No. 4-4. IHO White then issued the Amended Order on Pendency on August 2, 2024, ECF No. 4-5, adding that the DOE would provide L.M. with transportation "to and from iBrain as needed by the Student to receive in-person special education services." Amended Pendency Order, ECF No. 4-5 at 2. On August 30, 2024, IHO White issued an FOFD. Pl. Mem., ECF No. 27 at 12.

Plaintiff appealed the Amended Pendency Order by filing this action on October 30, 2024. Complaint, ECF No. 1. Plaintiff separately appealed the FOFD to an SRO, which was assigned SRO No. 24-439 ("SRO 24-439") before SRO Krolak. Pl. Mem., ECF No. 27 at 12. SRO Krolak affirmed the FOFD on December 30, 2024. ECF No. 36-1 at 18. Plaintiff had not appealed this SRO decision at the time when his summary judgment motion was filed, *see* Pl. Mem., ECF No. 27 at 6, but he later pursued an appeal by filing another action in this District on May 12, 2025, Case No. 25-CV-3960 (the "2025 Action"). 2025 Action, Dkt. No. 1. That case is before Judge Vargas.

A tabular summary of the relevant proceedings appears below:

7

| 2022–2023 School Year | 2023–2024 School Year | 2024–2025 School Year |
|---|---|---|
| IHO Case No. 228621 | IHO Case No. 250975 | IHO Case No. 277244 |
| SRO No. 22-150 | SRO No. 23-312 | SRO No. 24-439 |
| 2022 Action, No. 22-CV-7519-JPC | 2024 Action, No. 24-CV-3266-MMG | Instant Case (Pendency); 2025 Action, No. 25-CV-3960-JAV (FOFD) |

### 4.   The Instant Motions

On March 19, 2025, Plaintiff moved for summary judgment, supported by a memorandum of law, ECF No. 27, asking this Court to modify the Amended Pendency Order to require Defendants to fund L.M.'s transportation through Sisters.  Pl. Mem., ECF No. 27 at 7.  Plaintiff argued that L.M.'s placement as of July 2, 2024, the date the DPC was filed, was determined by Judge Cronan's summary judgment decision in the 2022 Action, which required the DOE to pay directly for Sisters to provide transportation.  Pl. Mem., ECF No. 27 at 19.  Plaintiff further contended that, before it was modified by this summary judgment decision, SRO No. 22-150 established L.M.'s placement as the DOE reimbursing Plaintiff for the cost of transportation through Sisters.  Pl. Mem., ECF No. 27 at 7–8.  According to Plaintiff, the DOE never provided transportation for L.M. and cannot be considered L.M.'s then-current placement as to transportation.  Pl. Mem., ECF No. 27 at 22.

Defendants opposed Plaintiff's motion and cross-moved for summary judgment on May 6, 2025, supported by a memorandum of law, ECF No. 35 ("D. Mem.").  Defendants advanced two procedural arguments, contending that

Plaintiff's claims must be dismissed due to: (1) a failure to exhaust administrative remedies and (2) mootness because Plaintiff failed (at the time) to appeal from SRO 24-439. D. Mem., ECF No. 35 at 6. Defendants also argued that Plaintiff is not entitled to recover either late fees under the Sisters Agreement or attorneys' fees. D. Mem., ECF No. 35 at 15–16. Notably absent from Defendants' brief was any argument about what constituted L.M.'s then-current placement at the time of Plaintiff's DPC.[3] Defendants presented no argument either defending the Amended Pendency Order or rebutting Plaintiff's primary argument as to what constituted L.M.'s then-current placement.

Plaintiff filed an opposition to Defendants' motion, ECF No. 37 ("P. Opp."), on May 28, 2025. On June 17, 2025, Defendants filed their reply in further support of their motion, ECF No. 48 ("D. Reply"). These briefs mainly addressed the procedural arguments advanced in Defendants' cross-motion.

On October 30, 2025, the undersigned requested supplemental submissions (the "Supplemental Submissions") on the pending motions, *see* ECF No. 60, which the parties filed on November 25, 2025. *See* Plaintiff's Supplemental Brief, ECF No. 66; Defendants' Supplemental Brief, ECF No. 67 ("D. Suppl."). Defendants' Supplemental Submission was the first filing in which they advanced a competing theory as to what established L.M.'s pendency placement at the relevant time. The

---

[3] The closest Defendants came to addressing this central issue was their argument that Plaintiff cannot rely on his unilateral choice to sign a contract with Sisters to argue that Sisters is L.M.'s "operative placement." D. Mem., ECF No. 35 at 12–14. But that is not the primary argument that Plaintiff presented on summary judgment. As described above, Plaintiff identified both SRO 22-150 and the summary judgment decision in the 2022 Action as providing for transportation through Sisters.

undersigned heard oral argument on December 9, 2025 (the "Oral Argument").

## II.   LEGAL STANDARDS

### A.   Summary Judgment Under the IDEA

The usual summary judgment standards do not apply in IDEA cases. *S.H.W. v. New York City Dep't of Educ.*, No. 21-CV-4808 (JPC), 2023 WL 2753165, at *4 (S.D.N.Y. Mar. 31, 2023). In this context, summary judgment is "in substance an appeal from an administrative determination, not a summary judgment." *Id.* (quoting *Arlington Cent. Sch. Dist. v. D.K. ex rel. C.K.*, No. 2-CV-2117 (DLC), 2002 WL 31521158, at *7 (S.D.N.Y. Nov. 14, 2002). In reviewing IDEA administrative proceedings, "the district court must base its decision 'on the preponderance of the evidence.'" *T.P. ex rel S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (quoting 20 U.S.C. § 1415(i)(2)(C)(iii)). Moreover, "the existence of a genuine issue of material fact will not result in a denial." *Bettinger v. New York City Bd. of Educ.*, No. 6-CV-6889 (PAC), 2007 WL 4208560, at *4 (S.D.N.Y. Nov. 20, 2007) (citing *J.R. v. Bd. of Educ. of the City of Rye Sch. Dist.*, 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004)). "While federal courts do not simply rubber stamp administrative decisions, they are expected to give due weight to these proceedings, mindful that the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998) (cleaned up). However, "a court accords no particular deference to an SRO on pure questions of law." *Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696

(S.D.N.Y. 2006); *see also Mr. "M" ex rel "K.M." v. Ridgefield Bd. of Educ.*, No. 5-CV-584 (RNC), 2007 WL 987483, at *4 (D. Conn. Mar. 30, 2007) (citation omitted) ("Courts do not . . . defer to an IHO's conclusions of law").

### B.     Pendency

"Under IDEA, the pendency inquiry focuses on identifying the student's then current educational placement." *Arlington*, 421 F. Supp. 2d at 696 (citing *Zvi D.*, 694 F.2d at 906). Although not defined within the statute, the Second Circuit has found the phrase "then current educational placement" to mean "the last agreed upon placement at the moment when the due process proceeding is commenced." *Id.* (citation omitted). Once established, a pendency placement can be changed: "(1) by an agreement of the parties; (2) by an *unappealed* decision of an IHO; (3) by a decision of a state review officer that agrees with the child's parents . . . or (4) by determination by a court on appeal from an SRO's decision." *Id.* at 697 (emphasis in original) (citations omitted).

### C.     Exhaustion

The IDEA provides that "before the filing of a civil action . . . the procedures under subsections [governing due process hearings and appeals] shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415(l). Thus, a parent normally must appeal an IHO decision to an SRO before suing in court. *Murphy*, 297 F.3d at 197. However, the exhaustion requirement "is not an inflexible rule." *Mrs. W. v. Tirozzi*, 832 F.2d 748,

756 (2d Cir. 1987). The Second Circuit has recognized that "an action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions to" the exhaustion requirement. *Murphy*, 297 F.3d at 199. This is because, "given the time-sensitive nature of the IDEA's stay-put provision, 'an immediate appeal is necessary to give realistic protection to the claimed right.'" *Id.* (quoting *Miss America Org. v. Mattel, Inc.*, 945 F.2d 536, 545 (2d Cir. 1991)).

## III.   ANALYSIS

### A.   Plaintiff Complied with the IDEA's Exhaustion Requirements

Defendants argue in their cross-motion that Plaintiff's case should be dismissed for failure to exhaust administrative remedies. D. Mem., ECF No. 35 at 10. Here, Plaintiff appeals from the Amended Pendency Order issued by an IHO, but skipped the step of an SRO appeal before filing this action. Defendants' argument should be rejected because, as was determined in a prior dispute between these same litigants, "a parent seeking review of an IHO's pendency determination need not exhaust administrative remedies—*i.e.*, by appealing the order to an SRO—before seeking judicial review." *Mondano v. Banks*, No. 22-CV-7519 (JPC), 2024 WL 1363583, at *3 (S.D.N.Y. Mar. 30, 2024) (citing *Murphy*, 297 F.3d at 199). Because Plaintiff is appealing an IHO pendency determination—the Amended Pendency Order—Plaintiff was not required to first appeal to an SRO.

At the Oral Argument, Defendants claimed that filing separate district court actions for the same school year (*i.e.*, the instant action challenging the Amended Pendency Order and the 2025 Action challenging the FOFD and SRO 24-439) "is

against the spirit of the exhaustion and even the exception to the exhaustion requirement" of the IDEA.  Dec. 9, 2025 Transcript, ECF No. 70 ("Tr.") at 21:23–22:13.  But Defendants were unable to identify any authority supporting their position and acknowledged that, for issues of pendency, the IDEA "does give the parents an option to come to federal court if they so choose." *Id.* at 22:5–6.  Further, in their Supplemental Submission, Defendants acknowledged that an IHO's pendency order does not "merge" into the IHO's FOFD in the way that an interlocutory decision merges into a final judgment.  D. Suppl., ECF No. 67 at 1–2.  To the contrary, while there may be some overlap between the two, a pendency order and an FOFD address questions that are "wholly different." *Id.* at 2.  Thus, this suit should not be dismissed for failure to exhaust administrative remedies.

### B.      Plaintiff's Appeal Was Timely

Presenting this argument for the first time in their Supplemental Submission, and without citing any supporting authority, Defendants argue that this action should be dismissed as untimely.  D. Suppl., ECF No. 67 at 2.  When asked to explain their position at Oral Argument, Defendants asserted that Plaintiff had 35 days to appeal the Amended Pendency Order to federal court, but could not point to any supporting authority beyond a conclusory reference to "the regulations." Tr., ECF No. 70 at 22:14–22.  The Amended Pendency Order is dated August 2, 2024.  Amended Pendency Order, ECF No. 4-5 at 3.  Plaintiff commenced this action on October 30, 2024, *see* Complaint, ECF No. 1, just under three months after the Amended Pendency Order.  Plaintiff argued he had at least 120 days to

13

file.  Tr., ECF No. 70 at 5:24–6:3.

"[T]he IDEA does not provide a statute of limitations for permissibly unexhausted IDEA claims brought directly in federal court. . . .  Instead, courts in the Second Circuit have applied a three-year statute of limitations borrowed from N.Y. C.P.L.R. § 214(2) to permissibly unexhausted IDEA claims."  *C.Q. v. New York City Dep't of Educ.*, No. 21-CV-3 (JGK), 2024 WL 4979293, at *4 (S.D.N.Y. Dec. 3, 2024) (citing *Piazza v. Fla. Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 688 (S.D.N.Y. 2011)).  Because Defendants have not cited any supporting authority and because there is authority to the contrary, the Court should reject Defendants' argument that this action is untimely.

## C.    Plaintiff's Claims Are Not Moot

Defendants argue in their cross-motion that this action should be dismissed as moot because the parties are bound by SRO 24-439, which neither party appealed.  D. Mem., ECF No. 35 at 15.  A case is moot, thereby divesting a court of jurisdiction, when the requisite dispute dissolves during the course of litigation. *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001).  Accordingly, Defendants argue that the failure to appeal SRO 24-439 means there is no live controversy concerning the 2024–2025 school year.

While Defendants' argument might have had some force when it was initially made on May 6, 2025, Plaintiff then *did* appeal SRO 24-439 by filing the 2025

14

Action on May 12, 2025.  *See* 2025 Action, Dkt. No. 1.  That case remains pending.

On reply, Defendants attempt to trivialize the 2025 Action by claiming it is "clearly time-barred."  D. Reply, ECF No. 48 at 5.  In making this argument, Defendants appear to ask this Court to decide the timeliness of the 2025 Action, when this same issue is being litigated *in the 2025 Action itself*.  *See* 2025 Action, Dkt. No. 22 at 9.  Deciding the timeliness of another pending action seems imprudent, and Defendants cite no authority suggesting it would be appropriate to do so here.  At bottom, Defendants' mootness argument rests on the premise that there is no pending appeal on the merits of L.M.'s IEP for the 2024–2025 school year.  As of the date of this Report and Recommendation, that premise is false because such an appeal remains pending in the form of the 2025 Action.  Accordingly, Defendants are not entitled to summary judgment that Plaintiff's claims are moot.

**D.    The Amended Pendency Order Was Incorrect**

The heart of this dispute is whether the Amended Pendency Order was correct in determining that L.M.'s "then-current educational placement" at the time of Plaintiff's due process challenge—July 2, 2024—included the DOE providing transportation to and from iBrain.  Plaintiff claims that L.M.'s then-current educational placement was Sisters providing transportation, with the DOE paying for these services directly.  Pl. Mem., ECF No. 27 at 7.  According to Plaintiff, this is so because, *first*, SRO 22-150, from which the DOE did not appeal, required the DOE to reimburse Plaintiff for the cost of transportation through Sisters, and

*second*, Judge Cronan's March 30, 2024 summary judgment decision in the 2022 Action modified SRO 22-150 to require the DOE to pay Sisters directly. *See* Pl. Mem., ECF No. 27 at 8, 18.

On this central question, Defendants rely on an argument made for the first time in their Supplemental Submission. They contend that the most recent pendency-changing event was an agreement reached in May or June 2024 for the DOE to provide transportation. In support of this claim, Defendants point to certain letters filed in the 2024 Action on May 28, 2024 and June 26, 2024. D. Suppl., ECF No. 67 at 3.

For the reasons described below, the undersigned agrees with Plaintiff because SRO No. 22-150 and the summary judgment decision in the 2022 Action were indisputable pendency-changing events, while Defendants fail to prove that the parties reached an agreement for the DOE to provide transportation by July 2, 2024. Any agreement reached after July 2 is not relevant to this question.

Pendency is determined by looking to the "last agreed upon placement at the moment when the due process proceeding is commenced." *Arlington*, 421 F. Supp. at 696 (citing *Murphy v. Arlington Cent. Bd. of Educ.*, 86 F. Supp. 2d 354, 359 (S.D.N.Y. 2000)). Here, there was no agreement on an IEP during the relevant period. Thus, the parties agree that determining L.M.'s pendency placement depends on identifying the last pendency-changing event that occurred before July 2, 2024. *See* Tr., ECF No. 70 at 7:19–8:13, 27:20–28:10. As *Arlington* explained,

[o]nce a pendency placement has been established, it can only be changed in one of four ways: (1) by an agreement of the parties; (2) by an *unappealed* decision of an IHO; (3) by a decision of a state review officer that agrees with the child's parents . . .; or (4) by determination by a court on appeal from an SRO's decision.

*Arlington*, 421 F. Supp. 2d at 697 (emphasis in original) (citations omitted).[4]

Because pendency is a question of law, no particular deference is owed to the IHO's determination of this question in the Amended Pendency Order. That order concluded that, based on *Moonsammy v. Banks*, No. 24-CV-2616 (PAE), 2024 WL 2831042 (S.D.N.Y. June 3, 2024), L.M.'s pendency placement was set by SRO 23-312, which called for the DOE to provide L.M.'s transportation. *See* Amended Pendency Order, ECF No. 4-5 at 2 (citing L.M.'s pendency program as based on IHO Case No. 250975, SRO 23-312, and *Moonsammy*).

The undersigned therefore addresses each of the four categories of pendency-changing events described in *Arlington* to determine which was the most recent as of July 2, 2024.

### 1.    An Agreement of the Parties

The first event that can change a pendency placement is an agreement between the parties. *Arlington*, 421 F. Supp. 2d at 697. Defendants contend that, before the DPC was filed on July 2, 2024, the parties reached an agreement for

---

[4] Defendants partially disagree with *Arlington's* statement that a pendency placement can be changed "by a decision of a state review officer that agrees with the child's parents." *Arlington,* 421 F. Supp. 2d at 697. Defendants contend that *any* unappealed SRO decision is a pendency setting event, regardless of whether the decision agrees with the child's parents. Tr., ECF No. 70 at 36:15–21. Defendants otherwise agree that *Arlington* controls.

Plaintiff to withdraw his appeal from SRO 23-312 for the 2023–2024 school year. Tr., ECF No. 70 at 32:18–33:7. According to Defendants, once Plaintiff withdrew his application for a preliminary injunction in the 2024 Action and advised the court that the only remaining issue related to attorneys' fees on May 28, 2024, this constituted an agreement to abandon Plaintiff's appeal from SRO 23-312 and Plaintiff's argument that the DOE provide transportation as called for by SRO 23-312. D. Suppl., ECF No. 67 at 3. Plaintiff, on the other hand, argues that there was no agreement between the parties as to transportation before July 2, 2024. Tr., ECF No. 70 at 9:24–10:15.

Defendants failed to present this argument in the briefing of the two cross-motions. Instead, Defendants advanced this argument for the first time in a Supplemental Submission that the undersigned requested to answer three distinct questions.[5] These submissions were not an invitation to reopen the briefing entirely. Thus, Defendants' new argument could be disregarded due to their failure to present it during briefing of the motions. Defendants' new argument is nonetheless considered—and rejected—below.

Because Defendants claim the parties reached an agreement as to L.M's transportation before July 2, 2024, the relevant question is whether there is sufficient evidence of such agreement. Plaintiff filed the 2024 Action to appeal from

---

[5] Paraphrased, the undersigned asked the parties to address (1) whether the Amended Pendency Order merged into the FOFD for the same school year, (2) whether this case and the 2025 Action can proceed simultaneously in light of some of the same issues being raised in both cases, and (3) why five other potential pendency-setting events were not controlling. *See* ECF No. 60.

SRO 23-312, which affirmed an FOFD for the 2023–2024 school year calling for the DOE to provide transportation.  *See* 2024 Action, Dkt. No. 1 ¶¶ 12–14, (seeking "reversal of [SRO 23-312's] findings that equitable considerations warrant denying any and all relief for special transportation services.").  Plaintiff's complaint also sought to enforce the IHO's earlier pendency order, which directed the DOE to fund transportation *through Sisters* while Plaintiff's challenge was pending.[6]  *Id.* ¶¶ 25–27.

Plaintiffs[7] filed a preliminary injunction motion in the 2024 Action to compel compliance with the IHO's pendency order for 2023–2024.  2024 Action, Dkt. No. 11. After this motion was briefed, Plaintiffs filed a May 28, 2024 letter (the "May 28 Letter") on the docket, Dkt. No. 22, advising that they "are withdrawing their application for a preliminary injunction."  Plaintiffs explained that they were doing so because they had just learned "that Defendants have fully funded the relief sought in the Plaintiffs' preliminary injunction application," *i.e.*, paying for transportation through Sisters for the 2023–2024 school year.  May 28 Letter, Dkt. No. 22 at 1.  Plaintiffs added, "[t]he only remaining issue in this matter is Plaintiffs' application for attorneys' fees," and requested time to file such application.  *Id.*  The court then denied the preliminary injunction motion as moot and set a June 28 deadline for Plaintiffs' fee motion.  2024 Action, Dkt. No. 23.

---

[6] These separate administrative rulings highlight the difference between a pendency order and an FOFD.  Although the IHO's substantive ruling in the FOFD was that the DOE was to provide transportation for 2023–2024, the same IHO recognized that transportation by Sisters was L.M.'s then-current placement when that due process challenge was filed on July 5, 2023.

[7] The parties used the plural, "Plaintiffs" in the 2024 Action.

Nearly a month later, Defendants filed a June 26, 2024 letter (the "June 26 Letter") on the docket, Dkt. No. 24, asking to stay the June 28 deadline for Plaintiffs' fee application "to allow the parties time to engage in settlement discussions regarding the same." Defendants further advised, "the parties believe that all claims are moot aside from attorneys' fees, and that settlement discussions on attorneys' fees would be beneficial and could resolve the matter without further litigation." June 26 Letter, Dkt. No. 24 at 1. The court adjourned the existing deadline and directed the parties to provide a joint status letter by August 26. 2024 Action, Dkt. No. 25. On August 26, the parties asked to file another status letter in 60 days. 2024 Action, Dkt. No. 27.

Next, Defendants filed an October 23, 2024 letter advising "that this case has settled." 2024 Action, Dkt. No. 29. The court then entered a 30-day dismissal order and the case was closed. 2024 Action, Dkt. No. 30. Curiously, more than one year later, the parties filed a stipulation of dismissal on December 16, 2025, attaching a stipulation of settlement dated November 19, 2025, *i.e.*, more than one year after the court's dismissal order. 2024 Action, Dkt. Nos. 31, 31-1. That stipulation of settlement required Defendants to pay $11,425 in attorneys' fees and dismissed Plaintiffs' claims with prejudice. 2024 Action, Dkt. No. 31-1 at 1–2.

Contrary to Defendants' argument, the foregoing sequence of events does not demonstrate that the parties had reached a binding agreement by July 2, 2024 that the DOE, not Sisters, would provide transportation for L.M. Plaintiffs' withdrawal

20

of their preliminary injunction motion does not evidence such an agreement.  To the contrary, Plaintiffs said they withdrew the motion because the DOE had fully paid for Sisters to provide transportation during the 2023–2024 school year.  This development may have mooted Plaintiffs' request to enforce the pendency order, but it did not moot Plaintiffs' challenge to SRO 23-312.  While Plaintiffs' May 28 Letter representing that only attorneys' fees remained to be resolved arguably suggested that the parties had reached a resolution as to Plaintiffs' appeal of SRO 23-312, it did not state what that resolution was, nor did Defendants' June 26 Letter to the same effect.

The parties did not file a notice of settlement in the 2024 Action until October 23, 2024, which led to entry of an Order of Dismissal soon thereafter.  *See* 2024 Action, Dkt. Nos. 29, 30.  Even then, one or both parties could have sought to reopen the case if the parties failed to finalize their settlement.  Agreements in principle sometimes break down, and reopening a case after a court enters a dismissal order is far from unprecedented.

Indeed, despite the outward appearance that the parties had finalized their agreement in October 2024, a settlement agreement was not filed in the 2024 Action until December 16, 2025, and the agreement itself was not executed *until November 19, 2025*, more than one year after dismissal of the 2024 Action.  *See* 2024 Action, Dkt. No. 31-1.  These subsequent developments further undermine Defendants' argument that there was an enforceable agreement between the parties as to

transportation by July 2, 2024, which is the date relevant here.

Defendants offer no writing from before July 2, 2024 setting forth the material terms of the parties' agreement, nor do they provide a sworn declaration from anyone who participated in the settlement negotiations describing where they stood at that time.  Instead, Defendants rely on the parties' May 28 and July 26 Letters, which suggest a tentative agreement but do not describe its material terms.  In fact, the only written agreement between the parties that has surfaced was not signed until many months after Defendants filed the instant motion.  While that agreement effectively withdrew Plaintiffs' appeal from SRO 23-312, it did not address transportation expressly.  Defendants' proof falls far short of what would be required to demonstrate an oral agreement as to transportation.

For the foregoing reasons, Defendants fail to demonstrate that there was an enforceable agreement between the parties as to transportation before July 2, 2024.

### 2.    An Unappealed Decision of an IHO

Neither side contends that L.M.'s pendency placement can be determined by an unappealed decision of an IHO.  Tr., ECF No. 70 at 8:24–9:8, 33:9–13.  The undersigned agrees because Plaintiff appealed from the FOFDs for school years 2022–2023, 2023–2024, and 2024–2025.  Thus, there was no pertinent "unappealed" decision of an IHO.

### 3.    A Decision of a State Review Officer That Agrees With the Parents

The next event that can change an educational placement is "a decision of a

22

state review officer that agrees with the child's parents." *Arlington*, 421 F. Supp. 2d at 697 (citing 34 C.F.R. § 300.514(c); 8 N.Y.C.R.R. § 200.5(1)(2)). Defendants stated at the Oral Argument that there is no pertinent SRO decision that agrees with Plaintiff. Tr., ECF No. 70 33:14–19 (Q: ". . . I guess the next box I can look at for a pendency changing event is an SRO decision that agrees with the parents. Where do I have that?" A: "Well, I don't think that you would here."). Defendants, however, argue that, once Plaintiff withdrew the preliminary injunction motion in the 2024 Action, the decision in SRO 23-312 became binding. D. Suppl., ECF No. 67 at 3; Tr., ECF No. 70 at 36:15–37:13. As described below, there are several problems with this argument.

First, SRO 23-312 was not an SRO decision "that agrees with the child's parents" as to transportation. *Arlington*, 421 F. Supp. 2d at 697 (citations omitted). To the contrary, it agreed with the DOE, and *Arlington* did not say that such an SRO decision could change a child's then-current educational placement. This conclusion is further supported by the language in 34 CFR § 300.518(d), which states that, "[i]f the hearing officer in a due process hearing conducted by . . . a State review official in an administrative appeal *agrees with the child's parents that a change of placement is appropriate*, that placement must be treated as an agreement between the State and the parents for purposes of" determining pendency. 34 CFR § 300.518(d) (emphasis added). Notably, this regulation does not say that an administrative appeal *that agrees with the DOE* must be treated as an

agreement for purposes of determining pendency.

At the Oral Argument, Defendants claimed their position is supported by *Moonsammy v. Banks*, No. 24-CV-2616 (PAE), 2024 WL 2831042 (S.D.N.Y. June 3, 2024). According to Defendants, *Moonsammy* stands for the proposition that "if an SRO decision is unappealed, whether it is unfavorable to the parents or favorable, it is still pendency." Tr., ECF No. 70 at 34:14–22. This is not an accurate characterization of *Moonsammy*. In that case, the court determined that, by declining to appeal an SRO decision, the *DOE* consented to a student's placement at iBrain. *Moonsammy*, 2024 WL 2831042, at *6. This determination was grounded in precedent that if an IHO or SRO "finds the parents' new placement to be appropriate by adjudicating the IEP dispute in the parents' favor, and the school district chooses not to appeal the decision," the DOE "consent[s], by operation of law, to [the student's] private placement." *Id.* (*quoting Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 532 (2d Cir. 2020)). *Moonsammy* made no determination running in the opposite direction: it did not find that the *parents* were immediately bound by any particular part of the SRO decision that they did not appeal. Thus, this case does not support Defendants' position.

Further, even if Defendants' reading of *Moonsammy* were correct, Defendants still would need to demonstrate that Plaintiff did not appeal the decision in SRO 23-312. In fact, Plaintiff did appeal SRO 23-312 by filing the 2024 Action. Defendants appear to argue that, while SRO 23-312 was initially appealed, it became

"unappealed" after Plaintiffs withdrew their preliminary injunction application in the 2024 Action. Defendants cite no authority to support this argument, and admitted as much during the Oral Argument. Tr., ECF No. 70 at 37:5–13 (Q: "When does an SRO decision that was appealed from transform into an unappealed SRO decision?" A: "Yes, your Honor. And I'm not sure that there's this specific fact pattern in another case.").

As discussed above with reference to Defendants' argument that there was an "agreement of the parties" as to L.M.'s transportation, the parties' May 28 and June 26 Letters filed in the 2024 Action did not terminate that case. Merely withdrawing the preliminary injunction and signaling that a settlement was at hand did not transform SRO 23-312 from an appealed decision to an "unappealed" decision. Therefore, Defendants' (and the Amended Pendency Order's) reliance on SRO 23-312 and *Moonsammy* was misplaced. *See* Amended Pendency Order, ECF No. 4-5 at 2 (citing L.M.'s pendency program as based, in part, on SRO 23-312 and *Moonsammy*).

In contrast, *Moonsammy* supports the conclusion that the SRO decision from the prior school year, SRO No. 22-150, was a pendency-changing event. That decision was partially favorable to the parents, finding that the DOE failed to provide a FAPE, that iBrain was an appropriate placement, and that the DOE needed to reimburse the parents for the cost of transportation through Sisters. *See* SRO 22-150, ECF No. 4-1 at 34. The DOE did not appeal that decision.

Accordingly, the DOE is deemed to have agreed to the aspects of SRO 22-150 that were favorable to the parents, notwithstanding the parents' appeal from other aspects of that decision, including the requirement that they pay Sisters first and seek reimbursement later. *See Moonsammy*, 2024 WL 2831042, at \*6 ("That the Moonsammys have appealed collateral aspects of SRO Bates's decision does not deprive the balance of that decision of immediate force.").

####     4.    A Determination by a Court on Appeal From an SRO's Decision

Finally, *Arlington* states that a pendency placement can be changed "by determination by a court on appeal from an SRO's decision." *Arlington*, 421 F. Supp. 2d at 697 (citations omitted). Plaintiff asserts that L.M.'s pendency placement for transportation was determined by the summary judgment decision in the 2022 Action, which was an appeal from SRO 22-150. Pl. Mem., ECF No. 27 at 7–8. SRO 22-150 required the DOE to reimburse the parents' payments to Sisters, but Judge Cronan determined on summary judgment that the DOE must make those payments directly. *Id.* This is the only "determination" on the merits on an appeal from an SRO's decision that the parties have identified.

By granting summary judgment as to Plaintiff's "request for the school district's direct retroactive payment for tuition and related services [including transportation] for the 2022–2023 school year," this decision in the 2022 Case changed L.M.'s then-current placement as to transportation from the DOE reimbursing the parents for payments to Sisters upon proof of payment to the DOE

26

making direct payments to Sisters.  *See* 2022 Action, Dkt. No. 33 at 26.  And it did so just a few months before Plaintiff's DPC for the 2024–2025 school year.

*          *          *

As described above, there are two decisions pertaining to the 2022–2023 school year that qualify as pendency-setting events: (1) SRO 22-150 and (2) the summary judgment decision in the 2022 Action.  Both decisions required transportation to be provided by Sisters.  While the DOE attempts to find a pendency-setting event in the litigation over the 2023–2024 school year, it fails to demonstrate that the parties had reached agreement as to L.M.'s transportation by July 2, 2024, the date when Plaintiff filed his DPC for the 2024–2025 school year.  Thus, any agreement ultimately reached in the context of litigation over the 2023–2024 school year came too late to establish L.M.'s pendency placement for the 2024–2025 school year.

### E.    What DOE Must Pay, Including Late Fees

While the summary judgment decision in the 2022 Action provides L.M.'s then-current placement as of July 2, 2024, that determination does not resolve the question of precisely what the DOE must pay under Plaintiff's contract with Sisters for the 2024–2025 school year.  As explained in another case involving a dispute over pendency,

> The IDEA does not speak directly to what transportation costs, if any, the DOE is obligated to pay.  And the DOE is not a party to each Plaintiff's contract with Sisters.  Instead, the sole source of the DOE's reimbursement obligations in each Plaintiff's case is the applicable administrative order.

27

*Davis v. Banks*, No. 22-CV-8184 (JMF), 2023 WL 5917659, at \*4 (S.D.N.Y. Sept. 11, 2023) (citations omitted). Further, the summary judgment decision in the 2022 Action concerned Plaintiff's contract with Sisters for the 2022–2023 school year, and Plaintiff acknowledged that it entered into a new contract with Sisters for the 2024–2025 school year. Tr., ECF No. 70 at 59:25–60:1. While there may be similarities between these two contracts, it would be a stretch to conclude that a summary judgment ruling about what the DOE must pay under one contract with Sisters can simply be applied directly to an entirely separate contract with Sisters two school years later.

As observed in *Davis*, the DOE is not a party to Plaintiff's contract with Sisters for 2024–2025 and is not directly bound by it. *Davis*, 2023 WL 5917659, at \*4. No administrative order has directly determined what the DOE must pay under that contract. That is because the IHO erroneously determined that L.M.'s then-current placement included the DOE providing transportation, and thus had no occasion to determine what payments the DOE should make under the Sisters Agreement for 2024–2025. As was done in *Davis*, the undersigned recommends a remand to determine these issues in accordance with the Court's decision on L.M.'s pendency placement. *Id.*

If the Court does so, it would not be necessary to decide whether the DOE must pay late fees. *See* D. Mem., ECF No. 35 at 15–16. Plaintiff argues that he is entitled to late fees because "they are included in the contract between Plaintiff and

28

Sisters." P. Opp., ECF No. 37 at 11. While this is an issue that an IHO should decide in the first instance, the text of the Sisters Agreement does not appear to support Plaintiff's position.

> [Sisters] understands and accepts [Plaintiff] will be seeking third party payments for SERVICES from the [DOE] through either a Stipulation Agreement or through an impartial hearing process. **[Sisters] agrees to suspend payment obligations until an interim or final administrative or judicial decision is made obligating [DOE] to pay all or part of FEES** and those payment obligations will become immediately due as per the terms of this AGREEMENT, and shall be paid within thirty (30) days of the interim or final decision or execution of a Stipulation Agreement. In the event an administrative or court decision is not in the [Plaintiff's] favor for payment, payment will be suspended until the [Plaintiff] has exhausted all legal remedies available to [him] to secure third party funding, when all payments will immediately become due.

Sisters Agreement, ECF No. 4-2 at 3 (emphasis added). While it is not clear from the record whether Plaintiff has made any payments under this agreement, its plain language suspends payment obligations while funding is litigated. Thus, it does not appear that late fees have accrued. Nevertheless, because the factual record is incomplete, the undersigned recommends that an IHO address this issue in the first instance.

### F.    Attorneys' Fees

Plaintiff may file a motion for reasonable attorneys' fees and costs, together with supporting documentation, within **30-days** of the entry of Judge Ho's order related to the present motions, assuming that Plaintiff remains the prevailing party at that point. Defendants shall file any opposition and objections to that motion within **14-days** from the filing of that motion.

## IV. CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion be **GRANTED** and Defendants' Motion be **DENIED**. Further, the undersigned respectfully **RECOMMENDS** that this matter be remanded to the IHO for further determinations as to the Sisters Agreement consistent with this Report and Recommendation.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. §636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. *See* Fed. R. Civ. P. 6(a), (b), (d). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Dale E. Ho, United States Courthouse, 40 Foley Square, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Ho.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: January 5, 2026
      New York, New York

Henry J. Ricardo
United States Magistrate Judge